UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DEBRA ROWE,**<br>Plaintiff**,**<br>vs.<br>**COMMISSIONER OF SOCIAL SECURITY,**<br>Defendant. | CASE NO. 19-cv-07723-YGR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 22, 25 |

Plaintiff Debra Rowe brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act. Currently pending before the Court are the parties' cross-motions for summary judgment. Plaintiff requests remand for calculation of benefits or, in the alternative, remand for further proceedings. Defendant requests affirmance of the denial of benefits or, in the alternative, remand for further proceedings.

Having carefully considered the parties' briefing and the administrative record filed in this case, and for the reasons stated below, the Court **GRANTS** the plaintiff's motion, **DENIES** the defendant's motion, and **REMANDS** for further proceedings.

**I. BACKGROUND**

Plaintiff protectively filed applications for SSI and DIB on October 5, 2016, alleging that she had been disabled since June 1, 2016. (Administrative Record ("AR"), Dkt. No. 16, at 249–63.) The Social Security Administration ("SSA") denied plaintiffs' claims, initially, on December 20, 2016, and, upon reconsideration, on March 26, 2017. (*Id.* at 74–119.) Plaintiff subsequently requested a hearing before an administrative law judge ("ALJ"), which was held on August 2,

2018, before ALJ C. Howard Prinsloo. (*Id.* at 40–73.) The ALJ heard testimony from plaintiff and a vocational expert. At the hearing, Rowe, who was represented by counsel, amended her alleged onset date of disability to March 24, 2015. (*Id.* at 44.) By written decision dated November 27, 2018, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 24, 2015 through the date of the decision. (*Id.* at 19–39.) Plaintiff's request for Appeal Council review was denied on September 9 and 18, 2019, rendering the ALJ's decision as the final decision of the Commissioner. (*Id.* 1–12.)

While the Court has carefully reviewed the administrative record in its entirety, it does not attempt to summarize the 700+ page record in this case. Nor is a full factual summary necessary for the Court to address the motions. Instead, specific facts relevant to disposition of the motions are included in the discussion below.

## II. LEGAL FRAMEWORK

### A. STANDARD OF REVIEW

Pursuant to sentence four of 42 U.S.C. § 405(g), district courts "have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 USC § 405(g). However, "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1098 (9th Cir. 2014)).

A court "will disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). A court "must consider the evidence as a whole, weighing both the evidence that supports and the

evidence that detracts from the Commissioner's conclusion." *Id.* (internal quotation marks and citation omitted). If the evidence is susceptible to more than one rational interpretation, the ALJ's findings must be upheld if supported by reasonable inferences drawn from the record. *Id.*

Finally, even when the ALJ commits legal error, the ALJ's decision will be upheld so long as the error is harmless. *Brown-Hunter*, 806 F.3d at 492. However, "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The court is "constrained to review the reasons the ALJ asserts." *Id.*

### B. STANDARD FOR DETERMINING DISABILITY

DIB and SSI are available for an individual who is "disabled." 42 U.S.C. §§ 423(a)(1)(E), 1381a. "To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, determining: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity, the claimant can still do his or her past relevant work; and (5) whether the claimant can make an adjustment to other work." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (internal quotation marks and citations omitted); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (the "five-step sequential evaluation process to determine disability" applies to Title II and Title XVI claims). The residual functional capacity ("RFC") referenced at step four is what a claimant can still do despite her limitations. *Ghanim*, 763 F.3d at 1160 n.5. "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

### III. ALJ'S DECISION

By written decision dated November 27, 2018, the ALJ concluded that Rowe had not been under a disability from March 24, 2015 through the date of the decision. (AR at 33.) At step one, the ALJ found that she had not engaged in substantial gainful activity since March 24, 2015, the amended allege onset date. (*Id.* at 24.) At step two, the ALJ found that Rowe suffered from a severe medically determinable impairment, namely, degenerative disc disease. (*Id.*) At step three,

3

the ALJ concluded that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Act's listed impairments. (*Id.* at 26.)

Prior to step four, the ALJ assessed that Rowe had the residual functional capacity to perform light work with the following exceptions: she could occasionally climb ladders, ropes, or scaffolds, occasionally work at unprotected heights or around dangerous or moving machinery, and occasionally reach overhead. (*Id.* at 27.)[1] In making this RFC determination, the ALJ found that her medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that her statements were not entirely consistent with the medical evidence in the record. (*Id.* at 28.) The ALJ based these findings upon consideration of testimony by Rowe regarding her alleged symptoms, a statement by her friend and roommate Sandra Russell regarding the same, certain of Rowe's medical records, and RFC assessments completed by agency physicians as well as Rowe's providers. (*Id.* at 28–31.)

At step four, the ALJ determined that Rowe was capable of performing her past relevant work as a waitress, bartender, and cashier, which do not require the performance of work-related activities precluded by her RFC. (*Id.* at 31.) In the alternative, at step five, the ALJ arrived at a "not disabled" finding based on the Medical-Vocational Rules framework. (*Id.* at 32.) In

---

[1] Relevant here are "sedentary work" and "light work," which are each defined by agency regulations as follows:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567, 416.927.

addition, based on the vocational expert's testimony, the ALJ found that Rowe could perform other jobs existing in the national economy, namely, a production line solderer, electrical accessories assembler, and marker. (*Id.* at 33.) Thus, the ALJ concluded that she had not been disabled during the relevant period. (*Id.*)

IV. **ANALYSIS**

Plaintiff alleges the following errors committed by the ALJ: (1) improper weighing of the medical opinions; (2) improper rejection of testimony by plaintiff and the third-party witness; and (3) unsupported findings at steps four and five of the evaluation process in light of the earlier errors. Based upon a review of the administrative record, the Court finds that the first error is dispositive and therefore does not reach the remaining claimed errors.

In weighing medical opinions, courts "'distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physician); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.'" *Id.* (quoting *Lester*, 81 F.3d at 830). "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Id.* (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "'The weight afforded a non-examining physician's testimony depends on the degree to which [he] provide[s] supporting explanations for [his] opinions.'" *Id.* (citing *Ryan*, 528 F.3d at 1198).

Here, plaintiff specifically challenges the ALJ's assignment of *no* weight to the opinions of examining certified physician assistant ("PA-C") Chris Buschar, non-examining physician Dr. Trula Thompson, and treating primary care physician Dr. Tatiana Antoci. Plaintiff also takes issue with the ALJ giving the most weight to the opinion of the non-examining state agency medical consultant Dr. Guillermo Rubio, whose assessment predated plaintiff's most recent MRI findings. The Court considers each medical source in turn.

5

### A. PA-C BUSCHAR (EXAMINING PHYSICIAN ASSISTANT)

With respect to PA-C Buschar, the Court finds that the ALJ did not err in assigning no weight to his opinion. Based on a physical functional evaluation dated April 10, 2015, PA-C Buschar opined that Rowe was limited to sedentary work, i.e., that she was able to lift 10 pounds maximum, frequently lift or carry lightweight articles, and work or stand only for brief periods. (AR at 382.) The ALJ gave PA-C Buschar's opinion no weight because it "cites no objective findings and was made without the benefit of the claimant's treatment notes, indicating that this limitation was based entirely on the claimant's subjective statements." (*Id.* at 30.) The ALJ also reasoned that "the physical examination completed by PA[-]C Buschar documents entirely normal findings." (*Id.*)

The ALJ's reasoning for discounting PA-C Buschar's assessment is sound. In the evaluation form, PA-C Buschar not only fails to cite any objective findings but concedes: "I have no records yet." (*Id.* at 381.) Moreover, the physical examination resulted in normal findings, including the following notation: "no pain to palpat[i]on today on exam. Neg SLR B. heel toe walk with no concerns or pain. Strength in B LE intact." (*Id.* at 387.) Accordingly, the ALJ's assessment of PA-C Buschar's opinion was proper.

### B. DR. THOMPSON (NON-EXAMINING PHYSICIAN)

The Court finds that the ALJ discounted an opinion that Dr. Thompson did not make. Based on a review of medical evidence form dated May 12, 2015, Dr. Thompson opined that Rowe "does not appear likely to meet SSI/ABD severity criteria." (*Id.* at 396.) To the extent that this assessment suggested that Rowe was limited to sedentary work, the ALJ gave the opinion no weight because it "relies on the assessment of PA[-]C Buschar discussed above and includes insufficient support or basis[.]" (*Id.* at 30.) However, Dr. Thompson did not affirmatively determine Rowe's physical residual functional capacity. Rather than merely noting the lack of an opinion, the ALJ's assessment of Dr. Thompson's "opinion" is unsupported by the record.

### C. DR. ANTOCI (TREATING PRIMARY CARE PHYSICIAN)

With respect to Dr. Antoci, Rowe's treating primary care physician, the ALJ is required to give deference as follows:

6

> As a general rule, a treating physician's opinion is entitled to substantial weight. Nevertheless, the ALJ need not accept the opinion of a treating physician. If a treating physician's opinion is not contradicted by other evidence in the record, the ALJ may reject it only for clear and convincing reasons supported by substantial evidence in the record. But if the treating doctor's opinion is contradicted by another doctor, the ALJ may discount the treating physician's opinion by giving specific and legitimate reasons that are supported by substantial evidence in the record. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.

*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (internal quotation marks, alterations, and citations omitted).[2] The record contains treatment notes by Dr. Antoci beginning January 16, 2017, through June 1, 2018. (AR at 548–714.) The Commissioner does not deny that plaintiff has an established treating relationship with Dr. Antoci.

The Court finds that the ALJ's assessment of Dr. Antoci's opinions violates the treating physician rule. Even assuming that the opinion of non-examining medical consultant Dr. Guillermo Rubio (discussed below) provides a valid contradicting opinion, the ALJ fails to give "specific and legitimate reasons that are supported by substantial evidence in the record" for discounting both of Dr. Antoci's opinions. The Court considers each of her opinions in turn.

### 1. FEBRUARY 17, 2017 PHYSICAL FUNCTIONAL EVALUATION

Dr. Antoci first opined on a physical functional evaluation form dated February 17, 2017, that Rowe was limited to sedentary work. (*Id.* at 550.)[3] The ALJ gave this opinion no weight because it "includes almost no support or basis, and instead emphasizes the claimant's self-report." (*Id.* at 31.) The ALJ mischaracterizes Dr. Antoci's evaluation, which expressly stated her examination findings as follows: "On inspection[,] no deformities, but severe limitations of [range of motion]. [M]ild numbness over the feet area." (*Id.* at 549.) Moreover, the evaluation cited diagnostic testing, including an MRI, and noted that Rowe has had spinal steroid injunctions, neither of which the ALJ makes any mention in his decision. (*Id.* at 548–50.) Dr. Antoci also

---

[2] The 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017. *See* 20 C.F.R. § 416.920c(a). The claims here were filed prior to this date.

[3] Although the evaluation form is not signed, given its location in the record and the matching handwriting, the parties appear to agree that the form was completed by Dr. Antoci.

7

attached a two-page range of joint motion evaluation chart, which the ALJ did not consider. (*Id.* at 551–52.) Thus, the Court finds that the ALJ's reason for rejecting Dr. Antoci's assessment of sedentary work in the February 2017 evaluation is neither legitimate nor supported by the record.

### 2. MARCH 30, 2018 MEDICAL REPORT

A year later, Dr. Antoci again opined in a medical report dated March 30, 2018, that Rowe was limited to sedentary work and additionally concluded that she would miss on average four or more days per month. (*Id.* at 557.) The ALJ accorded these opinions no weight because the "extreme limitations suggested in this form are inconsistent with the claimant's minimal physical examination findings," "the lack of observations of the claimant in distress or discomfort," and "the claimant's activities." (*Id.* at 30.) "In addition, this provider includes almost no support or basis for the extreme limitations." (*Id.*) "Finally, [the ALJ] note[d that] Dr. Antoci specifically questioned the claimant's multiple symptoms in her treatment records." (*Id.*) The Court considers each asserted reason in turn, finding that the last two justifications properly support discounting Dr. Antoci's opinion.

First, the ALJ reasons that Dr. Antoci's assessed limitations were inconsistent with Rowe's minimal positive examination findings. However, the ALJ focuses solely on the normal *neurological* findings of the physical examination (i.e., normal sensation, reflexes, coordination, muscle strength, and tone) but neglects to consider Dr. Antoci consistently finding "decreased and stiff" range of motion upon inspection of Rowe's lumbar spine. (AR at 606, 614, 621, 628, 634, 641, 656, 662, 674, 688, 702, 707, 712.) These findings are just as relevant to assessing plaintiff's physical limitations, and an ALJ cannot isolate evidence supporting his decision without weighing evidence that detracts from it. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (stating that a treating physician's statements "must be read in context of the overall diagnostic picture he draws"). Thus, the Court finds the ALJ's cherry-picking from the examination findings inappropriate.

Second, the ALJ cites the lack of observations of Rowe in distress or discomfort. Once again, the ALJ mischaracterizes the record. Rowe not only regularly presented to Dr. Antoci with back pain, which she treated on multiple occasions with epidural steroid injections, but, in the last

8

year of the relevant period, Rowe also visited the emergency room five times on account of her back pain and was referred to specialists, one of whom recommended laminectomy should the epidurals not work. (AR at 560–664, 670–76, 648–714, 730–36, 761–63.) The ALJ failed to mention any of these observations anywhere in his decision. Thus, the Court finds that this justification by the ALJ lacks merit.

Third, the ALJ relies on Rowe's activities as a basis for rejecting Dr. Antoci's assessment of limitations. In particular, the ALJ points to farm work which Rowe had not done in the last two years since moving back to Washington state from North Dakota. (*Id.* at 29.) The ALJ also focuses on the fact that Rowe's providers encouraged her to increase her physical activity. (*Id.* at 30.) The fact that she had done farm work years ago and that her providers suggested that she should exercise do not bear on her *current* and *actual* residual functional capacity. Thus, Rowe's purported activities do not justify the ALJ's discounting of Dr. Antoci's assessment of limitations.

Fourth, the ALJ cites Dr. Antoci's failure to support her assessment with any basis. Dr. Antoci's medical report cites only "stiffness" and "decreased [range of motion]" under clinical findings but offers no further explanation for either the sedentary residual functional capacity or the opinion that Rowe would miss four or more days of work per month. (*Id.* at 556–57.) The record is replete with Dr. Antoci's treatment notes spanning from January 2017 through June 2018, describing Rowe's symptoms as "made worse with flexion, extension, activity, sitting, standing[,] and lying down." (*E.g.*, *id.* at 602.) Moreover, Dr. Antoci acknowledges in her treatment notes that she reviewed the MRI results. (*E.g.*, *id.* at 621.) Nowhere in the decision does the ALJ cite to this objective evidence. Nevertheless, while the record provides some basis for Dr. Antoci's opinions, the Court finds that the ALJ was entitled to find that her assessment of extreme limitations lacked adequate support. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *see also Amanda Simone M. v. Comm'r of Soc. Sec.*, No. 18-349 (RHW), 2020 WL 1450428, at *7 (E.D. Wash. Mar. 25, 2020) ("It is the ALJ's prerogative to weigh the evidence and ALJs are entitled to reject alleged impairments based on conflicting and more persuasive medical opinions.") (citing *Thomas v. Barnhart*, 278 F.3d 954–59 (9th Cir. 2002)).

Fifth, the ALJ cites Dr. Antoci's remark about malingering. In particular, Dr. Antoci noted in a progress note dated March 29, 2017, that Rowe "would like to get[ ] disability and [was] mal[i]ngering multiple symptoms." (AR at 692.) An ALJ is entitled "to discount a [treating] physician's [opinion] that [is] based on those less than credible statements" made by the claimant. *See Bray*, 554 F.3d at 1228. Thus, the Court finds that the ALJ's assignment of no weight to Dr. Antoci's opinions on this basis was also proper.

In sum, contrary to plaintiff's position, the ALJ was entitled to accord little to no weight to the 2017 opinion of PA-C Buschar and the 2018 opinion of Dr. Antoci. Dr. Thompson, of course, did not assert the opinion that the ALJ purported to reject. While the reasons given by the ALJ for discounting Dr. Antoci's 2017 opinion were inadequate, the Court need not address whether such error was harmless because, as discussed below, the Court finds that the ALJ more significantly erred in his assessment of the opinion by non-examining agency medical consultant Dr. Guillermo Rubio.

### D.  DR. RUBIO (NON-EXAMINING MEDICAL CONSULTANT)

"Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999). Where a claimant's condition is progressively deteriorating, "the most recent medical report is the most probative." *Stone v. Heckler,* 761 F.2d 530, 532 (9th Cir. 1985); *see also Osenbrock v. Apfel,* 240 F.3d 1157, 1165 (9th Cir. 2001) (finding that medical evaluations prepared months earlier were not substantial evidence sufficient to rebut more recent conclusions by a treating physician) (citing *Stone,* 761 F.2d at 532).

Here, as part of plaintiff's request for reconsideration of denial of her DIB and SSI claims, Dr. Rubio completed a physical residual functional determination for Rowe on February 23, 2017. (AR at 103–06, 115–18.) Dr. Rubio determined that plaintiff could occasionally lift and/or carry 20 pounds, frequently and/or carry 10 pounds, stand and/or walk for about 6 hours, sit for about six hours, occasionally climb ladders, ropes, and scaffolds, and frequently stoop, kneel, crouch, and crawl. (*Id.*) With the exception of the limitation to frequent stooping, kneeling, crouching and crawling, the ALJ assigned "significant weight" to Dr. Rubio's opinion because the ALJ

deemed it consistent with the minimal physical examination findings, lack of observations of Rowe in distress or discomfort, and her activities. (*Id.* at 30.) The ALJ declined to adopt Dr. Rubio's assessed limitation to frequent stooping, kneeling, crouching and crawling, "as there is little support or basis for such limitations and they are inconsistent with the claimant's treatment records." (*Id.*)

The Court finds that Dr. Rubio's opinion does not qualify as substantial evidence. His February 2017 assessment predates a substantial portion of the medical records, including the April 2017 MRI of Rowe's cervical spine (*Id.* at 752–53) and the March 2018 MRI of her lumbar spine (*Id.* at 764–65), most of Dr. Antoci's treatment history between January 2017 and June 2018 (*Id.* 548–714), the five emergency room visits between July 2017 and May 2018 (*Id.* at 560–85, 730–36, 761–63), and two consultative reports from January 2018 and May 2018 by neurosurgeon Dr. Dave Atteberry (to whom Dr. Antoci referred Rowe) (*Id.* at 592–95, 754). It is not even clear whether Dr. Rubio considered the January 2017 consultative report of radiologist Dr. David Shoemaker. (*Id.* at 596–601.) These records may reveal or support additional limitations greater than demonstrated by the objective evidence available at the time Dr. Rubio reviewed the medical evidence in February 2017. Thus, the Court finds that the ALJ erred in assigning significant weight (indeed, the most weight) to Dr. Rubio's opinion.

This error is not harmless because the ALJ relied exclusively on Dr. Rubio's unsupported assessment to arrive at the residual functional capacity determination prior to step four. No other medical source assessed a residual functional capacity of light work with the postural limitations assessed by the ALJ. Thus, the ALJ's residual functional capacity determination otherwise lacks substantial support from the record. *See, e.g.*, *Huerta v. Astrue*, No. 13-CV-1210 (WHO), 2014 WL 1866427, at *16 (N.D. Cal. May 8, 2014) ("In sum, the ALJ improperly discounted the opinions of Huerta's treating physician, as well as the opinion of an examining consultant and the favorable testimony of the medical examiner. Instead, the ALJ relied strongly on a stale RFC from a non-examining consultant that itself contradicted the ALJ's own determination as to Huerta's RFC through May 31, 2009. These errors impacted the RFC determination and require remand.").

With harmful error established, the Court has discretion to remand or reverse and award benefits. *See McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See Benecke v. Barnhart,* 379 F.3d 587, 595–96 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See id.* at 594.

Based on a review of the record, the Court cannot determine whether plaintiff is, in fact, disabled due to her physical impairment. Indeed, the record contains evidence regarding the increasing severity of plaintiff's degenerative disc disease, the most recent of which records the ALJ did not consider. Instead, the ALJ afforded significant weight to the opinion of the non-examining agency physician in developing the residual functional capacity assessment. However, as noted above, no agency physician opined on plaintiff's physical abilities following the most MRI results and other observations. Further administrative proceedings would be useful for a physician to consider the more recent testing and objective findings in determining plaintiff's residual functional capacity, in addition to allowing for review of medical records not available to Dr. Rubio when his assessment was issued a year prior to Dr. Antoci. Upon remand the ALJ shall obtain additional medical opinion evidence as to plaintiff's physical functioning from a consultative examiner or a medical expert, and further develop the record as deemed necessary.[4]

## V. CONCLUSION

Based upon the foregoing, the Court **GRANTS** plaintiff's motion for summary judgment,

---

[4] Although the Court does not reach plaintiff's other claimed errors, on remand, the ALJ should reevaluate his credibility evaluation of testimony provided by both plaintiff and her friend/roommate Sandra Russell. *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); *see also Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir. 1993) (refusing to allow the ALJ to summarily dismiss third-party reports merely on the basis that the reports agreed with the claimant's complaints and the claimant was found not credible, and remanding for the ALJ to articulate specific findings for rejecting the testimony of the third-party witnesses).

1  **DENIES** defendant's cross-motion for summary judgment, and **REMANDS** for further
2  administrative proceedings.  The Clerk of Court is directed to enter judgment in favor of plaintiff
3  and against defendant and to close this case.
4          This Order terminates Docket Numbers 22 and 25.
5          **IT IS SO ORDERED.**
6  Dated: August 11, 2021

                                      **YVONNE GONZALEZ ROGERS**
                                      **UNITED STATES DISTRICT COURT JUDGE**